*In re* PARSHALL

Docket No. 90544. Submitted January 6, 1987, at Grand Rapids. Decided April 22, 1987. Leave to appeal denied, 428 Mich —.

The Department of Social Services filed a petition requesting juvenile court jurisdiction over respondents DeWayne Parshall's and Hope Parshall's child, Sabrina E. Parshall. Petitioner alleged that respondents' parental rights over another child, Nicholas Parshall, had been terminated following the death of Benjamin Parshall, yet another of respondents' children. Following a preliminary hearing before a referee, Sabrina Parshall was removed from respondents' home and the Branch Probate Court assumed jurisdiction. At the conclusion of a dispositional hearing, the court, Edward R. DeVito, J., found that petitioner had not presented clear and convincing evidence indicating a necessity to terminate respondents' parental rights, and ordered Sabrina to remain in foster care and respondents to continue with counseling. The court set a review hearing, which was rescheduled when petitioner filed a petition for rehearing. Following the rehearing, the court entered an order terminating respondents' parental rights on the basis of neglect, from which respondents appealed, claiming: (1) termination of their parental rights was not supported by clear and convincing evidence; (2) the court erred in terminating DeWayne Parshall's rights since the evidence established it was only Hope Parshall who had abused their children; and (3) the court lacked jurisdiction over respondents since a summons had not been issued to them.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Infants §§ 16, 43, 55.

Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 24, 30.

Am Jur 2d, Parent and Child §§ 8 *et seq.*; 39.

Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Validity and construction of penal statute prohibiting child abuse. 1 ALR4th 38.

1. Evidence consisting of the recommendation by two DSS caseworkers for the termination of respondents' parental rights, the testimony of two psychologists regarding their uncertainty over whether any child would ever be safe with Hope Parshall, the death of Benjamin Parshall due to head injuries inflicted by Hope Parshall, the termination of respondents' rights over Nicholas Parshall on the basis of neglect, and DeWayne Parshall's inability to prevent Hope Parshall from abusing their children clearly and convincingly established that termination of respondents' rights over Sabrina Parshall was warranted in this case.

2. Respondents had waived any notice defects by signing a waiver at the pretrial conference and they received a summons for the rehearing at which their parental rights were terminated. Thus, respondents were duly notified of the proceedings.

Affirmed.

1. PARENT AND CHILD — APPEAL — TERMINATION OF PARENTAL RIGHTS.

A probate court's findings of fact which support a termination of parental rights will not be reversed by the Court of Appeals unless they are clearly erroneous; a finding is clearly erroneous when, despite evidence to support it, the Court of Appeals on the entire evidence is left with a definite and firm conviction that a mistake has been made.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CHILD NEGLECT.

Real evidence of longtime neglect or serious threats to the future welfare of a child will justify termination of parental rights on the basis of neglect (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CHILD NEGLECT.

Evidence of a parent's abuse of one child is probative of the parent's proclivity to abuse other children.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — EVIDENCE — BURDEN OF PROOF — BEST INTERESTS OF CHILDREN.

Termination of parental rights on the basis of neglect is proper only where the party petitioning for termination of parental rights, by clear and convincing evidence, has sustained its burden of proof that termination of parental rights is warranted; after that standard is met, the probate court then considers the best interests of the child.

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CHILD NEGLECT.

    Parental rights may be terminated on the basis of neglect where, although one parent does not personally abuse the child, that parent permits an environment to continue where children will likely be abused.

*John Livesay,* Prosecuting Attorney, and *Frederic L. Wood,* Chief Assistant Prosecuting Attorney, for petitioner.

*Jonathan E. Maire,* for respondents.

Before: MacKenzie, P.J., and Weaver and J. E. Roberts,* JJ.

Weaver, J. Respondents appeal as of right from a probate court order terminating the parental rights to their minor child Sabrina Elaine Parshall. We affirm.

Respondents DeWayne and Hope Parshall were the parents of three children: Nicholas, born September 12, 1979; Benjamin, born January 12, 1981; and Sabrina, born February 7, 1985. Benjamin died on July 28, 1981, due to head injuries inflicted by his mother from severe shaking and beating. Thereafter, parental rights as to Nicholas were terminated in June of 1983 when he was found to have two broken arms consistent with severe twisting. At issue in this appeal is the termination of parental rights as to Sabrina.

These proceedings began the day after Sabrina was born, when a Department of Social Services worker filed a petition requesting juvenile court jurisdiction pursuant to MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2). The petition alleged that after Benjamin died, rights to the Parshall's second

---

  * Recorder's Court judge, sitting on the Court of Appeals by assignment.

child Nicholas were terminated for physical abuse. At the preliminary hearing before a referee pursuant to MCL 712A.11; MSA 27.3178(598.11), authorization was given to remove Sabrina from the home and place her in Coldwater, Michigan, and the Branch County Probate Court assumed temporary jurisdiction. After the pretrial conference, a dispositional hearing was held on March 14, 1985, pursuant to MCL 712A.18; MSA 27.3178(598.18).

At the dispositional hearing there was testimony by two clinical psychologists, a DSS children's protective worker, and the Branch County Juvenile Court caseworker. On respondents' behalf there was also testimony by Hope's sister and five of respondents' church friends. The psychologists evaluated Hope as impulsive, unable to handle frustration, suffering emotional impairment from her own history as an abused child, and so domineering that her husband would be unable to intervene on a child's behalf, leaving the child at risk in the home. Hope's sister and respondents' church members, on the other hand, all testified to seeing respondents progress in their behavior, and believed that Sabrina would be safe with them.

The hearing was adjourned until March 27, 1985. A psychiatrist recommended intensive individual psychotherapy for a minimum of six months to a year. A clinical psychologist, who had seen Hope during the termination proceedings for Nicholas and was currently seeing respondents on a weekly basis, was optimistic about their improvement. Both respondents indicated their willingness to cooperate with the court, although Hope indicated that she would drop therapy if the child was not returned.

The court found that the DSS had not presented clear and convincing evidence of necessity to terminate respondents' parental rights, and ordered

Sabrina to remain in foster care and respondents to continue in counseling, allowing the DSS to file another petition if respondents made no progress. A review hearing was set for October 1, 1985.

On filing of the petition for rehearing, the review hearing was rescheduled for October 25, 1985, to allow proper notice to the parties. Although it is unclear whether respondents were sent only a copy of the order adjourning the date from October 1 to October 25, or whether they received both the order of adjournment and a copy of the petition for rehearing, respondents did receive a timely summons for the October 25 rehearing.

At the rehearing, the psychologist who had seen respondents during the previous six months diagnosed both as suffering from personality disorders which are very difficult to cure. He described Hope as antisocial and DeWayne as passive-aggressive/dependent, each party's behavior bringing out the worst in the other: DeWayne's passivity increased Hope's anger; Hope's anger increased DeWayne's passivity. The psychologist believed any child to be at risk in their home: Hope could not control her anger, DeWayne was too passive to prevent violence, and neither party was really willing to change—DeWayne because he was afraid of his wife, and Hope because she liked having her way. Over a period of three years, he had seen no substantial change in Hope; she still tended to project onto others the blame for Benjamin's death, first onto the DSS for not removing the child, second onto DeWayne for not protecting him, and most recently onto her alleged premenstrual syndrome. A second psychologist also testified that because there was no substantial change in respondents during their six months of counseling, any child would be at risk with them.

Persuaded by the DSS's argument and testimony, on January 22, 1986, the court issued a memorandum opinion and order terminating respondents' parental rights on the ground of neglect, MCL 712A.19a(e); MSA 27.3178(598.19a)(e). Respondents appeal as of right.

On appeal, respondents argue that: (1) the court's termination of their parental rights for neglect is not supported by clear and convincing evidence; (2) the court erred in terminating De-Wayne's rights because it was only his wife who had abused children; and (3) the court lacked jurisdiction over respondents because it did not originally issue a summons. The DSS responds that the court's actions are supported by case law and clear and convincing evidence, and that whatever defect many have existed was waived or otherwise cured. We agree with the DSS and affirm.

I

The probate court found both parents unable to provide a fit home for Sabrina due to neglect under MCL 712A.19a(e); MSA 27.3178(598.19a)(e), which states in pertinent part:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing . . . the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> * * *
>
> (e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous. *In re Cornet,* 422 Mich 274,

277; 373 NW2d 536 (1985). A finding is clearly erroneous when, despite evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). We do not believe that a mistake was made here.

Real evidence of longtime neglect or serious threats to the future welfare of a child will justify termination of parental rights on the basis of neglect. *Fritts v Krugh,* 354 Mich 97, 116; 92 NW2d 604 (1958); *In re Moore,* 134 Mich App 586, 593; 351 NW2d 615 (1984). Abuse of one child is probative of a parent's proclivity to abuse other children, and may justify a change in custody. *In re LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973); *In re Dittrick Infant,* 80 Mich App 219, 222; 263 NW2d 37 (1977).

In this case, two DSS caseworkers recommended that respondents' parental rights be terminated. Two psychologists testified throughout the hearing process that their evaluations showed Hope to be highly impulsive with very low tolerance for frustration, and that even with long-term therapy it was uncertain whether any child would ever be safe with her. One of Hope's children had already died because of Hope's violent rages, and another child had been severely abused and subsequently removed from the home. Even the psychiatrist who testified for respondents acknowledged Hope's low frustration tolerance and recommended intensive therapy for six months to one year.

The burden is upon the petitioner to prove by clear and convincing evidence that termination of parental rights is warranted. *LaFlure, supra,* p 386. Once grounds for terminating parental rights have been established by clear and convincing evidence, the trial court considers the best inter-

ests of the child. *In re Schejbal,* 131 Mich App 833, 836, 346 NW2d 597 (1984). The court should then enter findings of fact. *In re Slis,* 144 Mich App 678, 688; 375 NW2d 788 (1985).

Here, the petitioner met its burden of proof, causing the probate court to find by clear and convincing evidence that termination of rights was warranted pursuant to MCL 712A.19a(e); MSA 27.3178(598.19a)(e) by reason of neglect. The court then entered detailed findings of fact and conclusions of law. The probate court's findings of fact are not clearly erroneous and will not be reversed.

II

Respondents next argue that the court clearly erred when terminating DeWayne's rights, because it was only Hope who abused children. This argument is without merit. Parental rights may be terminated on the basis of neglect where, although one parent does not personally abuse the child, that parent permits an environment to continue where children will likely be abused. *In re Rinesmith,* 144 Mich App 475, 483; 376 NW2d 139 (1985), lv den 424 Mich 855 (1985).

In this case, DeWayne was diagnosed as passive-aggressive/dependent. He admitted doing nothing about Benjamin's abuse, and at the time Nicholas was removed could not explain why the child had two broken arms. Therefore, it is reasonable to conclude that he permitted the continuance of an abusive environment dangerous to children, and would likely continue to do so unless his personality disorder could be cured by therapy. Since such therapy would require at least one year, during that year Sabrina would remain at risk. Hence the court did not clearly err in terminating DeWayne's parental rights as to Sabrina.

### III

Finally, respondents argue that the probate court lacked jurisdiction because it did not initially issue a summons. We disagree.

Respondents rely on *In re Brown,* 149 Mich App 529; 386 NW2d 577 (1986), for the proposition that the court needed to issue a summons if it did not dismiss the petition, and therefore the termination proceeding was void for lack of notice. *Id.,* p 537, 542. However, *Brown* only interprets the statutory language of MCL 712A.12; MSA 27.3178(598.12)[1] to require a summons in the case of a dispositional hearing or a hearing for termination of parental rights. Further, *Brown* acknowledged that a respondent may waive notice of hearing. *Id.,* p 542.

In this case, the termination proceedings were not void for lack of notice in contravention of *Brown.* First, *Brown* did not require a summons for either the prehearing or a pretrial conference. Second, respondents at their pretrial conference waived any notice defects for the March 14, 1985, dispositional hearing by signing a "Waiver of Notice of Hearing," such a waiver being specifically allowed by *Brown.* Third, respondents received a summons, which was personally and separately served on each of them, for the October 25, 1985, rehearing, at which their parental rights were terminated. Therefore, respondents should not be heard to complain of inadequate notice, since the

---

[1] After a petition shall have been filed and after such further investigation as the court may direct, in the course of which the court may order the child to be examined by a physician, dentist, psychologist or psychiatrist, *the court may dismiss said petition or may issue a summons* reciting briefly the substance of the petition, and requiring the person or persons who have the custody or control of the child, or with whom the child may be, to appear personally and bring the child before the court at a time and place stated. [Emphasis added.]

proceedings covered by the reasoning in *Brown*—namely the dispositional hearing and the hearing for termination of parental rights—were proceedings of which they had notice.

In conclusion, we note that the probate court's termination of parental rights on the basis of neglect is supported by clear and convincing evidence; that because DeWayne permitted the continuance of an abusive environment dangerous to children, the court did not err in terminating his rights; and that the termination proceedings were not void for failure of notice.

Affirmed.