*In re* MILLER

Docket Nos. 114824, 115038. Submitted October 2, 1989, at Lansing. Decided January 17, 1990. Leave to appeal applied for.

The Michigan Department of Social Services filed a petition in Sanilac County Probate Court, seeking jurisdiction over Julie E. and Melissa R. Miller, minor children of Julie Firlet and Phillip Miller, on the basis of neglect. The probate court, George E. Benko, J., ordered the DSS to take temporary custody of the children and ordered the parents to appear at the preliminary hearing on the following day. A jury trial was had on the question whether the court should take jurisdiction over the children. The jury determined that the court should take jurisdiction. Judge Benko ordered the parents to take part in a treatment program. A subsequent petition recommending permanent custody of the children was filed. Following a dispositional hearing, Judge Benko terminated the parental rights of the parents on the basis of parental neglect and the best interests of the children. Julie Firlet and Phillip Miller filed separate appeals. The appeals were consolidated for review.

The Court of Appeals *held:*

1. Service upon Firlet of a copy of the original petition plus a copy of the court's temporary custody order which directed her to appear at the preliminary hearing satisfied the statutory notice requirements.

2. Since the petition alleged that Firlet permitted her husband to create an abusive environment, the petition alleged an act which would justify termination of parental rights.

3. The existence of a special standard for termination of parental rights of parents of American Indian children does not deny equal protection to non-Indian parents.

4. Firlet was not denied effective assistance of counsel.

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 34, 35.
See the Index to Annotations under Equal Protection of Law; Indians; Termination of Parental Rights.

5. The comments during closing arguments of the children's guardian ad litem did not result in error mandating reversal.

6. The trial judge properly removed two prospective jurors on the basis of possible bias.

7. Reversal is not mandated by reason of the trial court's reading of the entire petition to the jury.

8. The prosecutor's comments in his closing argument were proper.

9. The trial court properly admitted evidence of violence between the parents.

10. Admission of hearsay statements concerning Phillip Miller's violence does not mandate reversal in view of the nonhearsay testimony concerning his violent behavior.

11. The trial court did not clearly err in finding parental neglect and terminating the parental rights of the parents. Since the court found the existence of one of the statutory grounds for termination, the trial court properly considered the best interests of the children.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NO-
   TICE.

   Service upon a noncustodial parent of a copy of the petition to take custody of the child and a copy of a court order taking temporary custody of the child and directing the parent to appear at the preliminary hearing at a designated time satisfies the statutory notice requirement (MCL 712A.12; MSA 27.3178[598.12]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CHILD
   NEGLECT.

   Parental rights may be terminated on the basis of neglect where, although one parent does not personally abuse the child, that parent permits an environment to continue where children will likely be abused.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — AMERI-
   CAN INDIANS — EQUAL PROTECTION.

   The parent of a child who is not an American Indian is not denied equal protection by reason of the fact that the standard necessary to terminate the parental rights of the parents of an Indian child are higher than those necessary to terminate the rights of a child who is not an American Indian, since there is a permissible rational goal underlying this separate treatment (MCR 5.980D).

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — EVI-
   DENCE — VIOLENCE BETWEEN PARENTS.

   It is not an abuse of discretion for a probate court in a trial to
   determine whether the court shall take jurisdiction over a
   minor child to admit evidence of violence between the parents
   of the child where one of the charged grounds for seeking
   jurisdiction is that the home is an unfit place for a child by
   reason of criminality or depravity.

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PRO-
   BATE COURT ORDERS.

   The failure of the parents of a child to comply with a probate
   court order requiring the parents to attend psychological coun-
   seling and parenting classes may be one, although not the sole,
   consideration in terminating parental rights.

6. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BEST
   INTERESTS OF CHILD.

   A probate court, after determining the existence of one of the
   statutory grounds for termination of parental rights, may
   consider whether termination of parental rights is in the best
   interests of the child.

*James V. Young,* Prosecuting Attorney (by *John
J. Broderick,* Assistant Prosecuting Attorney), for
the Michigan Department of Social Services.

*Joseph A. Greenleaf,* for Julie Firlet.

*Daniel E. Atkins,* for Phillip Miller.

Before: HOOD, P.J., and CYNAR and GRIFFIN, JJ.

PER CURIAM. This proceeding concerns Julie
Miller, born March 27, 1985, and Melissa Miller,
born June 25, 1986. They were removed from the
home of their parents, respondents Phillip Miller
and Julie Firlet, on January 13, 1988, after a
petition was filed by petitioner Michigan Depart-
ment of Social Services and an order to take the
children into temporary custody was issued by
Sanilac County Probate Court. Following a jury
trial on February 24 and 25, 1988, the court was

found to have jurisdiction over both girls. At a dispositional hearing on April 24, 1988, the court ordered the parents to comply with a treatment program. A supplemental petition was filed on October 27, 1988, recommending permanent custody. Following a dispositional hearing on December 1, 1988, the court ordered the termination of the parental rights of respondents. Respondents each appealed as of right, and their appeals have been consolidated. We affirm.

The mother, respondent Firlet, argues first that the probate court lacked jurisdiction in this case because, at the time the original petition was filed with the court, she was not served with a summons or a copy of the petition. However, we find that this argument is without merit.

In *In re Brown,* 149 Mich App 529, 541; 386 NW2d 577 (1986), this Court interpreted MCL 712A.12; MSA 27.3178(598.12) as requiring that a parent not having custody of a child be personally served with a notice of the petition and the time and place of the hearing. In this case, the two minor children of Ms. Firlet were taken into temporary custody on January 13, 1988. On that same date, the probate court records show, contrary to Ms. Firlet's allegations, that Ms. Firlet was personally served with a copy of the petition and the order to take into temporary custody. The order to take into temporary custody also directed Ms. Firlet to appear for a preliminary hearing on January 14, 1988, at 9:30 A.M. at the Sanilac County Probate Court. Since Ms. Firlet did not have custody of the two children pending the preliminary hearing, or any later proceedings in this matter, the statutory requirements were met, and the probate court's jurisdiction did not fail for lack of proper notice.

Next, respondent Firlet argues that the original

petition was insufficient as it pertained to her. She claims that she reported the incidents of abuse by Mr. Miller against the children and is now being condemned for his acts. However, our Court has held that termination of a parent's rights is proper where the parent permits the continuance of an abusive environment. *In re Parshall*, 159 Mich App 683, 690; 406 NW2d 913 (1987), lv den 428 Mich 909 (1987); *In re Rinesmith*, 144 Mich App 475, 483; 376 NW2d 139 (1985), lv den 424 Mich 855 (1985). Here, the petition alleged that Mr. Miller physically abused the children, that he locked them in their room at length without meals, and that Julie had severe vision problems and an improperly formed tongue that the parents had not voluntarily dealt with. Though much of this information was supplied by Ms. Firlet, the petition alleged not only that she allowed these conditions to continue, but also that she actively contributed to the problem by returning to the home with the children after being in an assault crisis center and after having professional advice not to allow Mr. Miller access to the children. Clearly, the petition was sufficient as to Ms. Firlet.

Respondent Firlet next argues that as a non-Indian, and a parent of non-Indian children, she was unconstitutionally denied equal protection of the law under the Fifth Amendment of the United States Constitution, because under the Michigan Court Rules, specifically MCR 5.980, a higher standard of proof and a greater evidentiary standard must be met in order to terminate parental rights to Indian children than that applicable to non-Indian children.

MCR 5.980 concerns child custody proceedings involving American Indian children and is consistent with the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.* See Staff Comments to MCR

5.980. Under MCR 5.980(D), the standards for termination of parental rights are:

> The parental rights of a parent of an Indian child shall not be terminated unless there is evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that parental rights should be terminated because continued custody of the child by the parent or Indian custodian will likely result in serious emotional or physical damage to the child.

Though Ms. Firlet is correct that these standards are higher than those governing termination of parental rights to non-Indian children under MCR 5.974 (e.g., standard of proof for non-Indians is clear and convincing), we do not agree that her equal protection rights have been violated.

While this issue has not been previously addressed in Michigan, we agree with the opinion of the Oregon Court of Appeals in *In the Matter of Application of Angus,* 60 Or App 546, 554-556; 655 P2d 208 (1982), review den 294 Or 569; 660 P2d 683 (1983), cert den 464 US 830; 104 S Ct 107; 78 L Ed 2d 109 (1983), which held that the ICWA did not deny equal protection to non-Indians.

In so holding, the court in *Angus, supra,* pp 554-555 noted:

> The United Stated Supreme Court has consistently rejected claims that laws that treat Indians as a distinct class violate equal protection. *Washington v Confederated Bands and Tribes of the Yakima Indian Nation,* 439 US 463; 99 S Ct 740; 58 L Ed 2d 740 (1979); *Delaware Tribal Business Committee v Weeks,* 430 US 73; 97 S Ct 911; 51 L Ed 2d 173 (1977); *United States v Antelope,* 430 US 641; 97 S Ct 1395; 51 L Ed 2d 701 (1977); *Fisher v District Court,* 424 US 382; 96 S Ct 943; 47 L Ed 2d 106 (1976); *Morton v Mancari,* 417 US

535; 94 S Ct 2472; 41 L Ed 2d 290 (1974). Traditional equal protection analysis cannot be applied.

In *Morton v Mancari, supra,* the court stated:

"Literally every piece of legislation dealing with Indian tribes and reservations, and certainly all legislation dealing with the BIA, single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 USC) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized." 417 US at 552; 94 S Ct at 2483-2484.
. . . The goal of the ICWA is to protect Indian families against disruption, pursuant to a Congressional finding that an alarmingly high percentage of Indian families are broken up by unwarranted removal of Indian children from them and that "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children . . . ." 25 USC 1901(3), (4).

Applying the rational relationship test for constitutionality of federal laws regarding Indians set forth in *Morton v Mancari,* 417 US 555, the *Angus* court concluded that the protection of the integrity of American Indian families is a permissible goal rationally tied to the fulfillment of Congress' unique guardianship obligation toward Indians. *Angus, supra,* pp 555-556. We agree and, thus, find no denial of Ms. Firlet's equal protection rights.

Respondent Firlet also argues that she was denied effective assistance of counsel because her trial counsel did not object to a delay of more than thirty-five days from the trial to the dispositional hearing, did not object to the violation of her equal

protection rights, did not object to the failure to make proper service of the pleadings on her, and did not object to the legal insufficiency of the petition. However, at the evidentiary hearing on this matter, Ms. Firlet's trial counsel explained that the delay of more than thirty-five days from trial to disposition was at his own request to avoid a scheduling conflict with a jury trial and to allow the disposition to occur at a time when he could more fully concentrate on it. Further, Ms. Firlet has not shown any prejudice to her from this delay. Her attorney also explained that he did not object to a denial of equal protection, to the lack of service of the summons, petition and notice of hearing, or to the legal insufficiency of the petition because his knowledge and experience showed that these were not solid bases for objection and such objections would not be sound trial strategy. Given our resolution of these issues, we agree with the trial court that Ms. Firlet had very competent counsel whether measured under the Michigan standard for effective assistance of counsel, *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977), or the federal standard, *Strickland v Washington,* 466 US 668; 104 S Ct 1052; 80 L Ed 2d 674 (1984).

Next, both respondents argue that it was error for the guardian ad litem to continuously interject his own personal opinion in his closing argument to the jury. We disagree.

In closing argument, counsel is permitted to draw reasonable inferences from the testimony. *Hayes v Coleman,* 338 Mich 371; 61 NW2d 634 (1953). However, this Court had held that a prosecutor's expression of personal belief about a type of case is improper. *People v Swartz,* 171 Mich App 364, 370-371; 429 NW2d 905 (1988).

In discussing respondent Firlet's role, the guardian ad litem stated:

> I listened to a lot of what was said by Ms. Firlet to other people and what she had to say and I guess I do believe that she tried, she tried to do the best job that she could do. But something just was lacking, okay, I don't know what it was but I don't think she could protect the children from what was taking place, by what I've heard, by Mr. Miller's conduct. . . . He did the discipline. And when I asked him why he did that, he says "because she wouldn't do it." Well, I don't believe that.

At this point, respondents' attorneys both objected. The court allowed the argument, stating that the interpretation of facts was proper in the closing argument and that the jury would be instructed that their interpretation might be different.

The guardian ad litem continued with many more statements starting with "I believe" or "I have to conclude." Following the guardian ad litem's closing argument, respondents' attorneys, out of the jury's hearing, moved for a mistrial. The guardian ad litem stated that he was stating his personal opinion to the jury. The court denied the motion, stating that there was personal opinion in only a few spots and that the jury instruction that the arguments are not evidence would cure any problem.

We find that, although the guardian ad litem expressed his conclusions with phrases such as "I believe," he did not depart from stating what the evidence showed and what inferences could be drawn from the evidence. He did not refer to matters outside the evidence or imply that he knew more about the case than what had been

presented. His statements of belief did not encompass personal beliefs about this "type" of case, nor did he unduly invoke the authority of his position as guardian ad litem. Further, the trial court instructed the jury that they were the sole judges of the facts and that the statements of attorneys in argument were not evidence. Under these circumstances, we find no error requiring reversal.

Respondent Miller also raises a number of additional allegations of error all of which we find to be without merit. Mr. Miller argues that the trial court improperly removed two prospective jurors for cause, however the record reveals that both prospective jurors made statements indicating possible bias and their removal for cause was within the court's discretion.

Mr. Miller also argues that the court's reading of the entire petition to the jury was improper and prejudicial since he claims the petition went beyond essential facts of the case and instead contained alleged admissions of the parents and conclusions. However, the reading of the petition to the jury was necessary to inform them of the basis of their duties as triers of fact. The trial court cautioned the jury that the petition was not evidence in the case, and its reading took place long before any testimony was given. Further, evidence was eventually presented regarding all the allegations in the petition. Mr. Miller was not prejudiced by the reading of the petition.

Next, respondent Miller contends without merit that the prosecutor improperly referred to Mr. Miller's violent reputation in closing argument. However, the record clearly indicates that on direct examination Mr. Miller testified as to his own reputation in the community for violence.

Nor do we find that the prosecutor's reference in closing argument to "steps" the probate court

might ultimately take, should the jury determine that jurisdiction over the children was warranted, impermissibly suggested to the jury that the consequences would be minor, as Mr. Miller argues. The jury could just as well have imagined "steps" as being termination of parental rights. Mr. Miller was not prejudiced by this statement either.

Respondent Miller also argues unpersuasively that the court improperly allowed evidence of violence between the parents. The decision whether to admit evidence is within the sound discretion of the trial court. *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988). To prove that the court should have jurisdiction over the children, petitioner had the burden of showing that the provisions of MCL 712A.2(b); MSA 27.3178(598.2)(b) applied. Evidence of violence between parents in front of the children is certainly relevant to showing, as provided under subsection (2) of the statute, that the home is an unfit place for the children by reason of criminality or depravity. Moreover, any prejudicial effect of the evidence was outweighed by its probative value, particularly in light of other evidence introduced to show Mr. Miller's physical abuse of Julie, and his own testimony regarding his reputation for violence.

Respondent Miller also alleges that the trial court erroneously permitted hearsay testimony to be introduced regarding out-of-court statements by Ms. Firlet concerning incidents of violence by Mr. Miller. However, Mr. Miller did not specifically object to this hearsay testimony at trial and has therefore waived appellate review, absent manifest justice. MRE 103(a)(1); *People v Worrell,* 111 Mich App 27,38-39; 314 NW2d 516 (1981), rev'd on other grounds 417 Mich 617 (1983). We find no manifest injustice here where Ms. Firlet testified regarding

all of the statements in question and other evidence admitted tended to corroborate those statements as well, including admissions made by Mr. Miller to a witness regarding his own abusive behavior toward the children.

Finally, both respondents contend that the trial court's decision to terminate their parental rights was clearly erroneous since the findings of fact on which the decision was based were not supported by clear and convincing evidence. We disagree.

On appeal from termination of parental rights proceedings, this Court reviews the probate court's findings of fact under the clearly erroneous standard. To be clearly erroneous, although there is evidence to support it, a finding must leave this Court with a definite and firm conviction that a mistake has been made. MCR 5.974(I); *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985); *In re Miller,* 433 Mich 331; 445 NW2d 161 (1989). When applying the clearly erroneous standard, MCR 2.613(C) requires that "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller,* 433 Mich 337.

At the adjudicative trial, the court heard evidence of emotional, physical, and medical abuse and neglect. Evidence was presented that Mr. Miller had thrown Julie out of the door, had grabbed her out of her high chair by the head and then dropped her, and had kicked her in the head. He had admitted to a witness that he threw the children.

Evidence was presented that the girls were locked into their sparsely furnished bedroom for long periods of time and were deprived of books, paper, and dolls. On each of three visits by witnesses at midday, the girls were found in their bedroom. Their diapers were in such need of

changing that fecal matter dripped down their legs.

Ms. Firlet told the visitors of the physical abuse by Mr. Miller and indicated by several statements that she abided by his decisions on handling the girls (makeshift diapers, no children's games like "patty cake," no medical attention for Julie's tongue). After Ms. Firlet went with the girls to an assault crisis center, the girls started to talk and play. But after two months, Ms. Firlet returned with the girls to Mr. Miller.

From psychological evaluations of respondents at the dispositional and review hearings, the court heard that Mr. Miller would not accept responsibility for his violent actions and that Ms. Firlet put her own emotional needs ahead of her children's and would not stand up to Mr. Miller. No evidence indicated that these personality characteristics had changed. The court could properly conclude from this that, if the children were placed again in the home, the abuse and neglect would continue.

Respondent Firlet argues that no culpable neglect on her part was shown. The Supreme Court has recently stated that the Legislature in 1988 PA 224, effective April 1, 1989, eliminated the ambiguity about the term "neglect" in § 19a(e) of the juvenile code by placing new language in the juvenile code that neglect is "without regard to intent." MCL 712A.19b(3)(d); MSA 27.3178(598.19b)(3)(d). *In re Jacobs,* 433 Mich 24, 37; 444 NW2d 789 (1989). Furthermore, Ms. Firlet's neglect was culpable. She allowed the conditions to continue, and even returned to these conditions against the advice of counselors at the assault crisis center. Allowing an abusive environment to continue establishes neglect. *Parshall, supra* at 690.

The court heard evidence that respondents had largely not complied with the court's order to attend psychological counseling and parenting classes, even though visitation of the children was dependent upon attending the counseling sessions. A job training program had been completed only when respondents were threatened with a cutoff of general assistance. Mr. Miller stated that he did not comply because he believed the adjudication was unfair and he did not trust the counselors involved with the court-ordered program. Ms. Firlet stated that attendance was difficult because of a lack of transportation and ready access to a telephone. However, the caseworker had been willing to arrange transportation for her. Transportation had been arranged for one appointment, but she cancelled and did not reschedule.

In light of the psychological evaluations and the evidence of poor parenting skills, the court-ordered sessions were needed. Failure to comply with such a court order may be one, although not the sole, consideration in terminating parental rights. *In re Bedwell,* 160 Mich App 168, 176; 408 NW2d 65 (1987). The trial court could properly consider such noncompliance as a further indication that the neglect that had been shown at trial would continue since neither respondent showed a willingness to change.

The court concluded, and we agree, that petitioner had proven by clear and convincing evidence that termination of respondents' parental rights was warranted in that they "are unwilling and unable to provide a fit home . . . by reason of neglect," thereby satisfying the requirement of MCL 712A.19a(e); MSA 27.3178(598.19a)(e).

Further, the trial court properly determined within its discretion that it was in the best inter-

est of the children to be placed outside the home. The court did not err in considering the best interests of the children, because once a court has determined the existence of a statutory ground for termination of parental rights by clear and convincing evidence the decision to actually terminate is within the court's discretion and the best interests of the children are to be considered. *In re Schmeltzer,* 175 Mich App 666, 675; 438 NW2d 866 (1989); *In re Schejbal,* 131 Mich App 833, 836; 346 NW2d 597 (1984).

Thus, there is ample evidence beyond the parents' noncompliance with the court-ordered program showing that the respondents had neglected the children and were unwilling to change. The trial court did not clearly err in finding that clear and convincing evidence justified termination of respondents' parental rights, nor did the trial court abuse its discretion in actually terminating those rights.

Given the record in this case, and our resolution of the last issue and the issues preceding it, we find no merit to respondent Miller's additional allegations that the trial court erred in denying his motions for directed verdict, judgment notwithstanding the verdict, and new trial.

Affirmed.

GRIFFIN, J., concurred in the result only.