# STATE OF MICHIGAN

# COURT OF APPEALS

In re WYATT, Minors.

UNPUBLISHED
July 14, 2016

No. 330977
Kent Circuit Court
Family Division
LC Nos. 13-052836-NA;
13-052837-NA; 13-052838-NA

Before: MURRAY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Respondent-father appeals as of right the December 3, 2015, order terminating his parental rights to the minor children KW, EW, and DW under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (g) (failure to provide proper care and custody). We affirm.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's determination of statutory grounds for clear error. *Id.*; MCR 3.977(K). If this Court concludes that the trial court did not clearly err in finding one statutory ground for termination, we need not address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Termination of parental rights is proper under MCL 712A.19b(3)(g) where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

The record supports the trial court's conclusion that the father's failure to properly supervise and parent the minor children was endemic throughout the proceedings. Testimony revealed that father allowed DW to wander alone near a busy intersection, and there is evidence that DW had escaped father's care on prior occasions as well. His parenting time lacked structure. The children often engaged him rather than him engaging them. There were instances of father physically injuring KW on various occasions. One instance of this resulted in father being charged with assault and battery and a no-contact order being imposed between him and KW in November 2013. Although father was permitted to visit EW and DW while the no-contact order was in place, he refused to visit any of the minor children until the order was lifted in March 2014. Father also failed to participate in any parenting time from June through October 2014. Although father told the DHHS that his work hours prevented him from attending the

-1-

children's counseling and visits, he failed to provide the DHHS any documentary evidence of when he worked. And when he belatedly submitted paystubs, they indicated that father worked far fewer hours than he had claimed. Father failed to attend most of the minor children's therapy sessions despite having agreed to do so. In failing to properly supervise and parent the minor children, father failed to provide them with proper care and custody. See *In re Laster*, 303 Mich App 485, 493-494; 845 NW2d 540 (2013).

Furthermore, there was no reasonable likelihood that father would properly supervise them within a reasonable time. His lack of parenting skills lasted throughout the case. He was reluctant to participate in services, and he was not receptive to parenting instruction. Father even told caseworkers that he could not implement the instructions he was given because the children did not exhibit behavioral difficulties. Indeed, father refused to recognize the children's problems. Father's refusal to acknowledge the children's issues flies in the face of manifest evidence that they were deeply troubled and needed substantial attention and care. Although it is true, as father argues on appeal, that his participation in services with Kyle Hinton was consistent and that Hinton testified that father showed progress, there is ample evidence supporting the conclusion that father did not make progress. Insofar as Hinton's testimony contradicted the testimony indicating that father was unable to properly supervise the minor children, this Court gives regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Indeed, father continually defied caseworkers, and he showed that he was unwilling to change his parenting methods, thus demonstrating that his improper supervision would continue. See *In re Miller*, 182 Mich App 70, 83; 451 NW2d 576 (1990).

Father's inability to secure stable, suitable housing further supported termination of his parental rights under MCL 712A.19b(3)(g). Father not only needed housing for himself and the three minor children, but he also planned to live with his girlfriend and her three minor children. Therefore, as one of the foster care managers testified, father needed "a significant amount of space." Yet, at the time of termination, father rented a four-bedroom and two-bathroom trailer. Father was late paying rent on the trailer for October and November 2015, the only two months he was responsible for making payments. In addition, DHHS determined in early September 2015, that the trailer was too soiled for visits to occur there, and instructed father to schedule a visit after he cleaned the home. But, father failed to reschedule a visit. Rather, his girlfriend rescheduled a visit in late October 2015, thus indicating that father failed to understand the importance of a clean house for the minor children.

In addition, there was no reasonable likelihood that father would acquire stable housing in a reasonable time. When the proceedings began, he was living with KW, EW, and DW in a hotel. After the children were placed with father's sister in September 2013, father lived in various places, including his van and a tent in his girlfriend's mother's yard. Although father managed to acquire housing in early 2015, he quickly lost it because he did not pay the rent and he allowed it to fall into disrepair, resulting in his eviction. Although father argues on appeal that he was evicted because the landlord failed to repair the leak that caused mildew to grow, evidence shows that it was father who failed to timely report the leak to the landlord, which prevented the landlord from repairing the damage. This, in conjunction with evidence that father's budget left only $15 a week per person for food, along with evidence of his chronic inability to pay rent, indicates that father would not be able to retain the trailer.

Furthermore, father continually demonstrated an inability to maintain suitable employment or income, which further supported termination under MCL 712A.19b(3)(g). Father was unable to maintain employment for more than a few months at a time, and he changed jobs nine times during the proceedings. His lack of stable work was the primary cause of his inability to maintain stable housing. Father's failure to maintain stable employment prevented him from providing the children with proper care and custody. And the fact that father was never able to maintain stable employment throughout the case indicates that there was no reasonable likelihood that he would be able to do so within a reasonable time. Even at the November 20, 2015 termination hearing father testified that he was seeking alternative employment. For the above reasons, we find that the trial court did not clearly err in terminating father's rights under MCL 712A.19b(3)(g). *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court reviews the trial court's determination of best interests for clear error. *Id.* When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App at 87. "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court can consider include how long the child lived in foster care or with relatives, the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all[,]" and compliance with the case service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The trial court found that termination of father's rights was in the children's best interests because there was not a strong bond between father and the children, father was unable to recognize the children's needs, the children needed permanency, the foster home was advantageous over father's care, and the foster parent was willing to provide the children permanency. We see no clear error in these findings.

As father argues on appeal, there was evidence of a bond between father and the minor children in the beginning of the proceedings. However, the bond between father and the children became weaker as the proceedings progressed, due in part to father's failure to visit the children at all for several months in 2014. Although KW spoke fondly of father, there is evidence that at the time of termination she had not spoken of him at all in the prior few months. Father's failure to attend the children's counseling sessions is a further indication of the lack of a strong bond between father and the children. This also supports the trial court's finding that father lacked a clear understanding of the children's needs. Evidence showed that father's participation in the children's therapy sessions would have benefitted him and the children because it would have increased father's understanding of the children's needs. This lack of a strong bond between father and the children and his lack of an understanding of the children's needs supported the trial court's finding regarding the children's best interests. See *In re Olive/Metts*, 297 Mich App at 41-42.

The record is replete with evidence supporting the trial court's finding that the children needed permanency. They had been in foster care for more than two years at the time of termination of father's rights. Evidence shows that the children's behavioral problems resulted in part from their lack of permanency and stability. They had a bond with their foster mother, who was dedicated to their care, able and willing to provide for their needs and give them permanency. See *id.* at 42. Father's persistent inability to maintain housing or to comply with the DHHS's directions shows that it is unlikely that the children could ever be returned to father's care. See *In re Frey*, 297 Mich App at 248-249. For the above reasons, the trial court did not clearly err in finding that termination was in the minor children's best interests. *In re Moss*, 301 Mich App at 80.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter